UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA R.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-1312 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred in evaluating several medical opinions, determining her severe impairments, and evaluating her testimony. (Dkt. # 13.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1974, has a high school education, and has worked as a fast food worker, deli worker, and sandwich maker. AR at 34-35. Plaintiff alleges disability as of March 31, 2014. *Id.* at 86. After conducting a hearing in December 2017, the ALJ issued a decision

ORDER - 1

finding Plaintiff not disabled. *Id.* at 43-85, 15-36. Utilizing the five-step disability evaluation process,[1] the ALJ first denied the DIB application because Plaintiff had no severe impairments as of her date last insured of March 31, 2014. *Id.* at 17-21. Next, addressing the SSI application as of the July 13, 2015 filing date, the ALJ found:

> Step one: Plaintiff has not engaged in substantial gainful activity since July 13, 2015.
>
> Step two: Plaintiff has the following severe impairments: degenerative joint disease of the cervical spine, degenerative disc disease of the lumbar and thoracic spine, obesity, anxiety disorder, and cannabis use.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> Residual Functional Capacity ("RFC"): Plaintiff can perform light work, sitting six hours and standing/walking six hours per day. She can understand, remember, and carry out short and simple instructions and tasks and have occasional contact with coworkers, supervisors, and the public.
>
> Step four: Plaintiff cannot perform past relevant work.
>
> Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR at 22-36.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

(cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV. DISCUSSION

**A. The ALJ Erred in Evaluating Medical Opinions on Physical Impairments**

*1. Legal Standard*

If an ALJ rejects the opinion of an examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions: "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 2. *The ALJ Erred by Discounting the Opinion of Lee Bourdeau, M.D.*

In January 2017, Dr. Bourdeau examined Plaintiff and opined her lumbar degenerative joint disease and morbid obesity caused marked limitations in her ability to lift, carry, stoop, and crouch. AR at 1327. He opined Plaintiff was limited to sedentary work, which was defined as lifting ten pounds maximum and lightweight articles frequently. *Id.* at 1328. The ALJ gave Dr. Bourdeau's opinions "little weight" as inconsistent with the medical evidence. *Id.* at 31. The ALJ cited a July 2017 treatment note showing a negative straight leg raise test and normal, though painful, range of motion. *Id.* at 1260. The ALJ did not explain how these findings contradict Dr. Bourdeau's opinions, and other treatment notes showed positive straight leg raise tests and reduced range of motion. *Id.* at 1283, 1054. The ALJ also cited a treatment note showing that Plaintiff was well-developed, which was irrelevant because Plaintiff did not claim developmental disorders, and that Plaintiff's neck was normal to inspection, which was not relevant to Dr. Bourdeau's functional assessment; and a record that does not exist. *Id.* at 1317, 31 (citing "Exh. 19F/30", but Ex. 19F has only 15 pages). None of the evidence the ALJ cited contradicts or undermines Dr. Bourdeau's opinions.

The Commissioner asserts the ALJ also provided the reason that Dr. Bourdeau recommended only conservative treatment. (Dkt. # 14 at 3-4.) The ALJ did not make such a finding or provide it as a reason but simply noted, in summarizing Dr. Bourdeau's report, that he recommended weight loss and NSAIDs. AR at 31. The Commissioner's argument is thus a post hoc argument on which the Court cannot rely. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). The Commissioner points to a treatment note showing Plaintiff "has significant difficulty with gait in the room but was able to walk into the room normally." AR at 1277. This does not undermine Dr. Bourdeau's opinions, as he did not opine restrictions on

standing or walking. *Id.* at 1327. The ALJ erred by discounting Dr. Boudreau's opinions without a specific and legitimate reason.

    3. *The ALJ Erred by Discounting the Opinion of Sharon Eder, M.D.*

  State agency non-examining physician Dr. Eder opined Plaintiff's obesity and degenerative disc disease limited her to sedentary work, lifting or carrying ten pounds maximum and standing or walking two hours per day. AR at 94. The ALJ gave Dr. Eder's opinions "little weight" as unsupported by the medical record. *Id.* at 30. The ALJ relied on a single treatment note from February 2016. *Id.* at 1149. These clinical findings do not contradict or undermine Dr. Eder's opinions, however. For example, Plaintiff was well developed and well nourished, which is irrelevant because Dr. Eder's opinions are not based on a developmental disorder or malnourishment. The finding of "no apparent distress" is of unclear relevance, as the ALJ did not explain what type of distress obesity and degenerative disc disease would be expected to cause during a medical visit, and thus failed to meet the specific and legitimate standard. Plaintiff's back and extremities were normal to inspection, but the ALJ did not identify any visible abnormalities that would be expected, the absence of which would contradict Dr. Eder's opinions. The ALJ similarly failed to explain the relevance of lack of "CVA [or] vertebral tenderness" or of normal neurological results for gait, finger-to-nose movement, motor deficits, or pronator drift. *Id.* "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. The ALJ here failed to meet this standard. It was error to reject Dr. Eder's opinions.

    4. *The ALJ Did Not Err by Discounting the Opinion of Alysa Ruddell, Ph.D.*

  In December 2016, Dr. Ruddell examined Plaintiff, diagnosed her with anxiety, homelessness, and cannabis use, and opined she had marked limitations in performing simple or

detailed tasks, learning new tasks, adapting to changes, communicating, maintaining appropriate behavior, completing a normal workday and workweek, and independent planning. AR at 1320-21. The ALJ gave Dr. Ruddell's opinions little weight as inconsistent with the longitudinal medical evidence. *Id.* at 32-33. An ALJ may discount a medical opinion contradicted by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions). The ALJ here cited April 2015, November 2015, and March 2017 treatment notes showing normal orientation, mood, affect, insight, judgment, and cooperation. *Id.* at 33 (citing *id.* at 1078, 1138, 1270).

Plaintiff argues her symptoms waxed and waned, and the ALJ selected isolated instances of improvement. (Dkt. # 13 at 6-7.) Plaintiff cites treatment notes reflecting her own reports, such as anxiety, mood changes, and sleep changes. (*Id.* at 7, 8.) However, even those treatment notes reflect largely normal psychiatric findings. (*See*, *e.g.*, *id.* at 685 (normal orientation, mood, affect, insight), 705 (normal orientation; cooperative attitude; fair insight; frustrated, unhappy mood and congruent affect), 968 (normal orientation, cooperation, and insight; unhappy mood and congruent affect), 1138 (normal cognition, mood, affect, attitude, insight), 1309 (normal appearance, attitude, affect, eye contact, psychomotor activity, thought process and content, orientation, and memory).) The ALJ reasonably found the overall record reflects typically normal clinical findings, and did not err by concluding Dr. Ruddell's opinions were inconsistent. Plaintiff argues Dr. Ruddell's objective findings, such as impaired memory, concentration, and abstract thinking, supported her opinions. (Dkt. # 13 at 8.) But the ALJ permissibly resolved conflicts in favor of the consistent longitudinal record of mostly normal clinical results over Dr.

ORDER - 6

Ruddell's one-time observations. Conflict with the medical evidence was a specific and legitimate reason to discount Dr. Ruddell's opinions.

**B. The ALJ Did Not Err in Discounting Plaintiff's Testimony**

*1. Legal Standard for Evaluating the Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is unsupported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether the claimant's medically determinable impairments reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

*2. The ALJ Did Not Err in Discounting Plaintiff's Testimony*

At a December 2017 hearing before the ALJ, Plaintiff testified she cannot work due to mental impairments and constant left arm pain, headaches a couple days per week, and pain in her neck and back. AR at 58-59. She can only sit for an hour or stand for ten minutes, and spends most of her time laying down. *Id.* at 59-60, 64-65. Her fingers go numb, making it difficult to

pick up or hold objects. *Id.* at 59. She no longer has the concentration to watch television. *Id.* at 60. She has anxiety around people. *Id.* at 67. In a 2015 Function Report, Plaintiff said she could only lift three pounds with each arm and her left arm could not reach above shoulder height. *Id.* at 354-55, 358-59. She reported she could not remember even simple, short instructions. *Id.* at 367. The ALJ discounted Plaintiff's testimony as inconsistent with her activities, the medical evidence, and lack of treatment.[3] AR at 27-30.

          a.       Conflict with Activities

The ALJ properly discounted Plaintiff's pain testimony based on activities that contradicted her testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A January 2016 treatment note documents Plaintiff's report of right shoulder pain, but states "[s]he is carrying a car carrier with her grandchild in it." AR at 1143. The ALJ reasonably inferred that a carrier with a child in it weighs considerably more than six pounds and found this inconsistent with Plaintiff's testimony that she has difficulty picking up or holding objects and cannot lift more than three pounds with each arm. *Id.* at 29, 59, 354-55. The ALJ's rational interpretation of the evidence must be upheld. *Thomas*, 278 F.3d at 954. This is not a "minor inconsistenc[y,]" as Plaintiff contends, but a direct contradiction of her testimony. (Dkt. # 15 at 8.) The ALJ did not err by discounting Plaintiff's pain testimony as inconsistent with her activities.

The ALJ erred, however, in discounting Plaintiff's mental symptom testimony based on conflict with her activities. The ALJ asserted Plaintiff cared for her grandchild but failed to cite any supporting evidence in the record. AR at 30. The ALJ cited applying for jobs but failed to explain how this activity contradicts Plaintiff's testimony of anxiety around other people and

---

[3] The ALJ also vaguely referenced "us[ing] drugs and alcohol more than she testified to at the hearing" but provided no citation to the record. AR at 30. The Commissioner does not defend this reason, apparently conceding it is unsupported by substantial evidence, and thus the Court need not address it. (Dkt. # 14 at 13-15.)

ORDER - 8

memory and concentration problems. *Id.* The ALJ cited using the bus, but Plaintiff testified she always rides with her boyfriend so he can calm her down. *Id.* at 69. The ALJ found Plaintiff's ability to drive "on a regular basis" inconsistent with her allegations, but did not cite any evidence that Plaintiff drives regularly. *Id.* at 27 n. 2. The Commissioner asserts that Plaintiff's ability to drive shows "considerable" mental skills but does not explain how such skills contradict Plaintiff's testimony. (Dkt. # 14 at 14.) Conflict with activities was a clear and convincing reason to discount Plaintiff's physical symptom testimony but not her mental symptom testimony.

                                              b.        Medical Evidence

Plaintiff's mental symptom testimony was permissibly discounted based on conflict with the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."). In February 2015, Plaintiff reported her anxiety interfered with social activities but not work. AR at 1086. This contradicted Plaintiff's testimony that her anxiety prevents her from working.

As discussed above with regard to Dr. Ruddell's opinions, the longitudinal record showed largely normal mental health findings. This was an additional valid reason to discount Plaintiff's mental health testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of [supporting] medical evidence cannot form the sole basis for discounting [symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ did not err by discounting Plaintiff's mental symptom testimony.

c. Lack of Treatment

The ALJ discounted Plaintiff's testimony of back pain because she had only "episodic treatment." AR at 28. Plaintiff does not effectively challenge this reason, merely asserting without explanation that the ALJ "committ[ed] legal error." (Dkt. # 13 at 15); *see Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (court "will not consider any claims that were not actually argued in appellant's opening brief"). Lack of treatment was a specific and legitimate reason to discount Plaintiff's back pain testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute a sufficient reason for discrediting a claimant's symptom testimony).

An ALJ must consider a claimant's proffered reasons for failure to seek treatment or follow prescribed treatment. *Trevizo v. Berryhill*, 871 F.3d 664, 679-80 (9th Cir. 2017). The ALJ found Plaintiff had only minimal mental health treatment, but erred by failing to address her proffered reason that an abusive ex-boyfriend prevented her from going to therapy. AR at 30, 77-78. Because the ALJ permissibly discounted Plaintiff's physical as well as mental symptom testimony based on clear and convincing reasons, inclusion of erroneous reasons was harmless. *See Carmickle*, 533 F.3d at 1163.

**C. The ALJ Did Not Harmfully Err in Determining Plaintiff's Severe Impairments at Step Two**

A claimant can only be found disabled based on severe medically determinable impairments. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. Impairments are severe if they "significantly limit" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).

1. *The ALJ Did Not Harmfully Err in Evaluating Mental Impairments*

Plaintiff contends the ALJ erred by failing to include bipolar disorder, personality disorder, affective disorder, or posttraumatic stress disorder (PTSD) at step two. Plaintiff points to no evidence of a PTSD diagnosis by an acceptable medical source. Plaintiff asserts Dr. Ruddell found mental impairments "including depression, bipolar, personality disorder, and PTSD," but Dr. Ruddell only listed diagnoses of anxiety, "[h]omeless," and cannabis use. (Dkt. # 13 at 11); AR at 1320. Dr. Ruddell specifically stated that Plaintiff "did not meet clinical criteria for PTSD today." AR at 1322. Plaintiff's mischaracterization of the record fails to convince the Court that the ALJ erred at step two.

State agency non-examining doctors Joshua J. Boyd, Psy.D., and Ben G. Kessler, Psy.D., evaluated Plaintiff's mental impairment allegations on initial review and on reconsideration, respectively. AR at 92-93, 95-97, 126-27, 130-32. The Disability Determination Explanation documents list anxiety disorder, affective disorder, and personality disorder as severe impairments. *Id.* at 92, 126. Dr. Boyd and Dr. Kessler opined "[s]ymptoms of anxiety and depression" limited Plaintiff to simple tasks and occasional interaction with others. *Id.* at 96-97, 130-32. The ALJ gave Dr. Boyd's and Dr. Kessler's opinions "significant weight" and adopted their limitations, but did not include affective disorder or personality disorder as severe impairments at step two. *Id.* at 31-32, 26. Plaintiff contends the ALJ erred by failing to explain why she adopted their opinions without adopting all of their diagnoses. (Dkt. # 13 at 9.)

Treating physicians Dean C. Dischler, M.D., and Partha S. Gonavaram, M.D., listed bipolar disorder in July 2015, February 2017, and March 2017 treatment notes. AR at 689, 1279, 1267. They did not, however, provide any objective medical evidence to support the diagnosis, apparently relying on Plaintiff's reports of a diagnosis or on a non-acceptable medial source's

diagnosis. Their own psychiatric findings were entirely normal. *Id.* at 689, 1270, 1283. They did not opine any limitations based on the diagnosis.

An ALJ's failure to properly consider an impairment at step two may be harmless where the ALJ considered the functional limitations caused by that impairment later in the decision. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (emphasis in original).

Here any error is harmless because the ALJ considered all evidence of mental limitations, regardless of specific diagnosis. Because the ALJ found in Plaintiff's favor at step two, she "could not possibly have been prejudiced" at that step. *Buck*, 869 F.3d at 1049. And in the RFC determination, Plaintiff fails to show prejudice because she identifies no functional limitations resulting from bipolar disorder, personality disorder, affective disorder, or PTSD.

> 2. *The ALJ Did Not Harmfully Err by Excluding Further Physical Impairments*

Plaintiff contends the ALJ erred by failing to include left shoulder tendinitis, unspecified right arm impairments, and migraines as severe impairments. (Dkt. # 13 at 11.) The treatment notes Plaintiff cites do not establish functional limitations beyond what the ALJ included in the RFC. Findings of headaches or shoulder tenderness or "calcific tendinitis" do not identify functional limitations. AR at 1179, 1260, 1150. The only other evidence that any of these impairments limit basic work activities is Plaintiff's testimony and self-reports documented in treatment notes, and even these often show only short-term limitations. *See id.* at 59, 749, 1144,

1257. Because the ALJ permissibly discounted her pain testimony, the ALJ properly concluded it did not establish that her impairments were severe. The ALJ did not harmfully err by excluding shoulder, arm, and headache impairments at step two.

### D. The ALJ Did Not Err at Step Three

Because Plaintiff's step three argument is based on the rejected argument that Dr. Ruddell's opinions were improperly discounted, her step three argument fails as well.

### E. Scope of Remand

The ALJ erred in discounting Dr. Boudreau's and Dr. Eder's opinions. The error is harmful because the ALJ may have relied at step five on jobs Plaintiff cannot perform. *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). Plaintiff requests remand for an award of benefits or, in the alternative, for further proceedings. (Dkt. # 13 at 18.) Plaintiff's argument for benefits rests on medical opinions the ALJ properly discounted. While the ALJ erred in discounting Dr. Boudreau's and Dr. Eder's opinions, their opined limitations to sedentary work remain contradicted by State agency doctors' opinions that Plaintiff could perform light work. The ALJ must resolve such conflicts. Accordingly, remand for further proceedings is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Dr. Boudreau's and Dr. Eder's opinions, reassess the RFC as appropriate, and proceed to step five as needed.

//

//

Dated this 10th day of March, 2020.

*MJPeterson*
MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 14